## Case No. 2,052.

### BRUNE et al. v. MARRIOTT.

[Taney, 132.] [1]

Circuit Court, D. Maryland. April Term, 1849. [2]

CUSTOMS DUTIES—ACT OF JULY 30, 1846—INVOICE VALUE — DEFICIENT QUANTITY—ABATEMENT IN CHARGES AT PORT OF SHIPMENT — PROTEST — SUFFICIENCY—RIGHTS OF IMPORTERS.

1. The eighth section of the tariff act of 30 July, 1846 [9 Stat. 43], which declares that, under no circumstances, shall the duty be assessed upon less than the invoice value, did not repeal the previous law (2 March, 1799 [1 Stat. 672]) which authorized allowances for deficiencies and damages incurred during the voyage; it applies to the value merely, and not to the quantity of the article imported.

[See note at end of case.]

2. The effect of the sixteenth section of the tariff act of 1842 [5 Stat. 563] was, wherever an ad valorem duty was imposed, to charge it only upon the amount of merchandise actually imported.

[See note at end of case.]

3. In the absence of any official appraisement of the amount and value of the deficiency, the only rule of abatement approximating to exact justice between the parties, would seem to be this—to estimate the dutiable value of the articles (sugar and molasses) lost by leakage, in the same manner and upon the same principles that the dutiable value of the amount mentioned in the invoice is ascertained, and to reduce the assessment accordingly, the amount of the de-

ficiency being ascertained from the returns of the official weigher and gauger.

[See note at end of case.]

4. A pro rata abatement is to be made also upon the amount of the incidental charges at the port of shipment, such as commissions, &c., and upon the value of the hogsheads in which the sugar and molasses are shipped (all of which enter into the amount upon which the duties are assessed).

5. A protest in the following terms—"Having been informed that it is the intention of the secretary of the treasury not to make allowance on the payment of duties, on such articles as may result here less in quantity, from loss in weight or leakage, than at the time of shipment (for instance, sugar, molasses, &c.), and on which a duty ad valorem of the invoice is exacted, we hereby protest against the payment of such entire amount of duty, being of opinion that the law at present in force authorizes an allowance for actual loss in weight or gauge, as shown by the difference in the invoice and the returns of the weighers or gaugers of such cargoes, after delivery in this port." "We desire that this protest should extend to all our importations of sugar and molasses, since the operation of the present tariff, viz.," &c.: was held, under the act of 1845 [chapter 22, 5 Stat. 727], not to apply to duties previously paid, but to apply to all duties exacted after the protest, and that a particular protest in each case was not required by the law.

[Applied in Hutton v. Schell, Case No. 6,961. Cited in Ullman v. Murphy, Id. 14,325; Schell's Ex'rs v. Fauche, 138 U. S. 571, 11 Sup. Ct. 379.]

[See note at end of case.]

6. The protest is not required to be made before the payment of what are called the estimated duties; for this payment is necessarily regulated by the invoice quantity, as well as the invoice price.

7. The protest is legally made when the duties are finally determined and the amount assessed by the collector, and a protest before or at that time is sufficient notice, as it warns the collector, before he renders his account to the treasury department, that he will be held personally responsible, if the portion disputed is not legally due, and that the claimant means to assert his right in a court of justice.

[Cited in Davies v. Miller, 130 U. S. 287, 9 Sup. Ct. 561; Schell's Ex'rs v. Fauche, 138 U. S. 571, 11 Sup. Ct. 379.]

8. The payment of money upon estimated duties is rather in the nature of a pledge or deposit than a payment; for it remains in the hands of the proper officer, subject to the final assessment of the duties; and if more has been paid than is due, the surplus belongs to the importer, and is returned to him.

[At law. Action by Frederick W. Brune & Sons against William H. Marriott, collector of the port of Baltimore, to recover back customs duties alleged to have been illegally exacted. Judgment for plaintiffs.]

The facts of this case, which was instituted by consent, on the 4th of November, 1848, are set forth in the following statement: It is admitted, that the Schedule A, herewith filed, to be taken as part of this statement, in its first, second and third columns correctly exhibits the importations of sugar and molasses by the plaintiffs, into the port of Baltimore, between the 8th day of February and the 8th day of November, A. D. 1847, both inclusive, and likewise the names of the vessels by which, and the places from

---

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

[2] [Affirmed in Marriott v. Brune, 9 How. (50 U. S.) 619.]

which such importations were made, and the dates of the entries of said importations; that column four exhibits the kind of goods so imported, and how they were contained; that column five exhibits the quantity, in pounds, of sugar, and in gallons, of the molasses, shipped in the West Indies, as stated in the invoices which accompanied such importations; that column seven exhibits the dutiable value in foreign currency (including all costs and charges) of the goods mentioned in the said invoices, which in column eight is changed into American currency; and upon this value duties were computed, and exacted by the defendant, of the plaintiffs, and paid by them, in order to get possession of their said goods, and that the amount of duties so exacted and paid is stated in column nine. It is further admitted, that all the goods imported by the plaintiffs as aforesaid, after their arrival and entry at the custom-house, were, by the direction of the defendant, submitted to the examination of weighers and gaugers, officers belonging to the custom-house, who made returns of the weights and gauges, respectively, of the goods submitted to them, which returns are correctly exhibited in column six. It is further admitted that, if column eight correctly exhibits the value at the place of shipment, of the quantity of goods mentioned in the invoices, including costs and charges, and exhibited in column five as having been shipped, then column ten exhibits the proportionate value, at the place of shipment, of the diminished quantity of goods, as ascertained by said officers to have arrived in Baltimore, and exhibited in column six, including their proportionate share of costs and charges. That column eleven exhibits the amount of duty, at thirty per cent. ad valorem, on the goods as valued in column ten; that column twelve exhibits the excess of duties, alleged by the plaintiffs to have been over-paid by them, and the aggregate of the sums in this column constitutes the claim, without interest, which they seek to recover in this action. The plaintiffs also claim interest on the alleged over-payments appearing in column twelve, from the time of such payments, respectively, and which interest is to be hereafter correctly ascertained. It is agreed, that column ten of Schedule B exhibits the value, in American currency, of the deficiency of the goods upon arrival, as compared with the invoices, agreeably to the ascertainment of the actual quantity of goods arrived, by the gauger and weigher, respectively, no account being taken of costs and charges, except in the case of molasses, the proportion of commission being allowed on that article. It is also agreed, that column eleven, in said schedule, exhibits the amount of thirty per cent. on the value of such deficiency so exhibited. It is further admitted, that the above-mentioned deficiency between the quantity of goods which arrived, according to the returns of the government officers, and that appearing in the invoices, occurred on and was produced by the voyage of importation; and it is also admitted, that allowances for damage to sugar and molasses injured by a peril of the sea, on the voyage of importation, are calculated in the mode contended for by the plaintiffs, as the true mode of ascertaining their alleged over-payments.

It is further admitted, that upon the 9th April, 1847, the plaintiffs addressed and delivered to the defendant the general notice or protest, in writing, signed by them, and herewith filed, marked "C" (see [Marriott v. Brune] 9 How. [50 U. S.] 622); and likewise, at the time of the entries of the cargoes of the Uzardo, Samuel D. Mitchell, Isabella, G. W. Russell, W. J. Watson, and Arietes, respectively, addressed and delivered to the defendant a special notice or protest, in writing, signed by them, and copies of which protests are herewith filed, marked "D." It is further submitted, whether the protests of the 9th April, 1847, can be applied to the cases of duties claimed to have been paid unjustly upon the cargoes of any vessel on whose cargoes the deficiencies were ascertained and finally adjusted, before the date of said protest, and whether it can be applied to the cargoes of those vessels whose deficiencies were not finally adjusted by the impost clerk, and whose duties were not finally charged to the collector in his accounts, until after said protest, although said deficiencies were ascertained, in fact, by the gauger and weigher, respectively; and whether such general protest can be applied to any subsequent importations and payments of the plaintiffs, in regard to which there was no special protest. And it is admitted that the deficiencies upon all the cargoes arriving before the Sarah Adams, had been ascertained by the gauger and weigher, respectively, and returned by them to the defendant, and had been finally adjusted by the impost clerk, and the duties on such cargoes had been charged to the defendant, in his accounts with the treasury, before the 9th of April, 1847; but it is admitted, that although the gauger and weigher had returned to the defendant the deficiencies on the cargoes of the Sarah Adams, Sebois, and Magnolia, yet, that the impost clerk, whose duty it is to compare such returns with the invoices, did not act thereon, and ascertain and adjust the true amount of duties due on such cargoes, and report thereon to the defendant, until after the said 9th of April. And it is further admitted, that the gauger and weigher did not make their returns of the deficiency in the cargo of the Frances Partridge, until the 10th of April, 1847. It is also admitted, that the custom of the importing merchants of Baltimore, in the sale of sugar and molasses, is as follows, viz: sugar is sold per pound, i. e. at a given price per hundred pounds; and molasses, per gallon, upon the quantity returned by the weigher and gaug-

er, as having been imported, without any reference, in either case (as to the price), whether a deficiency in quantity has been suffered on the voyage of importation or not, and also that in no case is the cask in which the sugar or molasses is contained, sold separately by said importing merchants. And it is also admitted, that in all importations of sugar from Porto Rico, no charge for casks appears in the invoices, but that in importations of molasses from that island, and of sugar and molasses from Cuba, a separate charge is made for the casks. It is agreed that any acts of congress, and the instructions of the secretary of the treasury, and his correspondence with the plaintiffs, may be read or referred to by either party, for whatever purpose they may be legally available.

Upon the foregoing statement of facts, the questions to be submitted to the court, are: (1) Whether the amount of duties, or any part thereof, exacted by the defendant and paid by the plaintiffs, where illegally exacted, by reason of being charged upon the entire amount and value of the goods, appearing in the invoices to have been shipped, without any allowance for the deficiency in weight or gauge from the voyage of importation, as shown by the returns of the government officers; and (2) whether the plaintiff can recover back in this suit, the duties so exacted, or any part thereof. If, upon these questions, the opinion of the court should be in favor of the plaintiffs, then the court shall give judgment for the plaintiffs, with costs; but if, on these questions, the opinion of the court should be in favor of the defendant, then judgment shall be entered for the defendant, with costs. And it is further agreed, that if the judgment in this case should be in favor of the plaintiffs, the amount, including interest, for which the judgment shall be entered up, may be hereafter calculated, in conformity with the principles which the court shall decide to govern the case; with liberty to either party to appeal from the judgment of the court, and with the further agreement, as part of this statement, that the court shall be at liberty to draw such inferences from the facts above-stated, as a jury might or would draw therefrom; and that either party shall hereafter have power to add to this statement any facts admitted by the other party to exist, which may be deemed essential by the court for the proper decision of the above questions.

Brown & Brune, for plaintiffs.

William L. Marshall, Dist. Atty., for defendant.

TANEY, Circuit Justice. This suit is brought against the collector, to recover certain duties paid under protest. It is submitted upon a case stated, in which it appears that, upon sundry importations of sugar and molasses, there was a considerable loss by leakage, during the voyage, and the quantity actually imported and received, as ascertained and certified by the proper officers, much less, in several cargoes, than that stated in the invoices. The duties were, however, assessed upon the invoice amount; and this suit is brought to recover back so much of the money as was paid for duties, upon that portion of the cargoes which was lost, on the voyage, by leakage.

The question arises upon the proviso in the eighth section of the act of 1846, which declares, that under no circumstances shall the duty be assessed upon less than the invoice value, any law of congress to the contrary notwithstanding. The question is, whether this proviso includes the quantity as well as the price or value of the merchandise mentioned in the invoice. The clause is certainly not free from ambiguity; the secretary of the treasury, in his circular letter of instructions to the collectors, dated 25th November, 1846, took notice of this difficulty, and expressed his opinion that it did not repeal the previous law, which authorizes allowances for deficiencies and for damages occurring during the voyage; the same opinion is more particularly stated in his letter of 30 January, 1847, to the collector of the port of New Orleans; and the instructions given in this letter would apply directly to cases like the one now before us, and sanctions the claim made by the plaintiffs. This instruction was, however, soon after recalled, and it seems, was not afterwards acted upon, nor are we able to discover, from the correspondence before us, the construction finally placed upon this proviso, by the department, nor to ascertain precisely the classes of cases to which it was supposed to extend, or to which it was supposed not to apply. We think the instruction first given, as above mentioned, is the true one, and that it was not the intention of the act of 1846 to annul the previous laws upon that subject. The principles of justice would seem to require that the merchant should be charged with duty only upon the merchandise which he actually introduces into the country; he imports nothing more, and brings in nothing more for sale or for consumption. He could not protect himself, by insurance, from ordinary leakage and damage, in articles which, from their nature, are liable to such casualties, without paying a premium heavier perhaps than the amount of loss, nor is it, we believe, one of the hazards usually, if ever, undertaken by the underwriters. If the duty is charged upon what is lost as well as what arrives, he will in fact pay, in almost every case, a higher duty on his importation than the law intends to impose; and the proviso would be inconsistent with the other provisions, and with the spirit of the tariff of 1846, if it be construed to exact such duties; for this law is avowedly framed on the most liberal principles of commerce, and contemplates a

reduction of duties upon articles of this description to a lower standard. It would hardly comport with this policy, to place in the law a proviso which, upon articles so important in commerce as sugar and molasses, would, in many cases, make the duties higher than they had ever been before, and indeed, in almost every cargo, make them higher than the rate specified in the law. We think the proviso refers to the price stated in the invoice, and not the quantity, and did not repeal the former law authorizing deductions and allowances to the importer in the cases mentioned.

There is another difficulty, however, in this case, since none of the previous laws make any specific provision for loss of quantity in sugar or molasses, by leakage, on the voyage; nor does it appear that the treasury department have formed any definite opinion on this particular question, or established any settled or uniform rule on the subject; for we find, upon examining the correspondence and instructions of the department, as we have already stated, that different instructions were given at different times, and finally an order given to make the allowance on molasses, but not on sugar. We do not see how, from the terms of this law, or of any previous act of congress, this distinction can be made; for the clause in relation to liquors, in the law of 1799, c. 22, § 59 (1 Stat. 672), can hardly be construed to embrace molasses. It is, however, evident, we think, that under the act of 1842, wherever the duty was ad valorem, it was charged only upon the merchandise actually imported or brought in; for the sixteenth section, which regulates the manner of estimating and charging the ad valorem duties, directs the appraisers, by all the ways and means in their power, to ascertain the value in the foreign market, and to charge the duty upon that value. They were not confined in any case to the invoice; and consequently, if the goods actually imported were found to be of less value than the price stated in the invoice, the duties were chargeable only on the value ascertained by the appraisers. Whether this diminution in value was occasioned by damage to the quality, on the voyage, or loss in quantity, could make no difference; for the appraisers appraised only the goods received and imported into the country, and it was the value of these goods which they were required to appraise, and upon which the duty was to be paid, and not merchandise which was stated in the invoice, but had not been actually brought in. This construction of the sixteenth section of the act of 1842 is confirmed by the twenty-first section of the same law, which expressly provides that when any deficiency in the quantity mentioned in the invoice is found in any package, the importer is to be allowed for it in estimating the duties. It is true, that the language in which this provision is made, would seem to make it applicable only to dry goods; but it can hardly be supposed that any distinction was intended to be drawn between dry goods and groceries, or that a rule deemed just as to one, would have been denied to the other; on the contrary, it shows that congress intended to impose the duty only upon the merchandise imported, and that the construction we have given to the sixteenth section, is the one which congress intended it should receive. As this appears to have been the policy of the government, uniformly manifested before the tariff act of 1846, we do not think that the provisions in relation to the invoice value could have been intended to change it; a different construction would make the law not only unjust in its principles, but would, in a multitude of cases, be likely to enhance the duties on sugar and molasses above the tariff of 1842, instead of reducing them. The language of the proviso does not require such a construction; and it would be opposed to the general legislation of congress, and more especially to the general scope and policy of the act of congress in which it is found.

The next question is, how is this deficiency to be ascertained and estimated? Regularly this should, it would seem, be done by the appraisers; for some of the items which make up the dutiable value of the goods, would be the same upon the quantity of sugar or molasses received, as upon the quantity invoiced; but others certainly, and the more important ones, would not. We understand that, since the act of 1846, no appraisement is made unless there is an excess over the quantity invoiced, or the goods are undervalued in the invoice; but the individual, of course, cannot be deprived of a legal right, if he produces the best evidence which the nature of his case will permit; and in this case the returns of the weigher and gauger show precisely the deficiency in quantity, and the invoice shows the amount upon which the duty was assessed; and the deficiency is admitted to have arisen from leakage on the voyage.

In the absence of any official appraisement, the only rule of abatement approximating to exact justice between the parties, would seem to be this—to estimate the dutiable value of the sugar and molasses lost by leakage, in the same manner, and upon the same principles, that the dutiable value of the amount mentioned in the invoice is ascertained, and to reduce the assessment accordingly. It appears, indeed, that in the importation of sugar from Cuba, the price of the hogshead is charged separately in the invoice, and it has been argued that, as these hogsheads are actually imported, there ought to be no deduction of that item, nor upon the charges at the foreign port, which also, under the act of congress, constitute a part of the value upon which the duty is assessed. But this would hardly be just to the merchant; for the hogsheads are of much more

value in Cuba than in this country, and they enhance the price of the hogshead of sugar in the foreign market. And as a smaller number would be required to contain the diminished amount of the sugar received, it is just that an abatement should be made for them in the same ratio with the sugar; for otherwise, the cargo of sugar, from the unnecessary number of hogsheads, would be assessed at a higher value than it was really worth in the foreign market; that is to say, higher than the quantity actually received was worth in the port at Cuba. And the same may be said of most of the charges of any importance; certainly, so far as concerns the commissions, which would necessarily be reduced in proportion with the market value of the merchandise shipped. Besides, in the invoices of sugar from Porto Rico, there is no separate charge for the hogsheads; the invoice states that so many hogsheads of sugar were shipped, at such a price. Undoubtedly, the manner in which it is put up, and the price of the hogsheads which contain it, form a part of its value in the foreign port, and constitute, therefore, a part of the sum in the invoice, upon which the duty is charged; yet, if one or more hogsheads are lost by leakage, and the importer is entitled to an allowance for it, the only mode by which the abatement could be made, would be, by the price of the hogshead of sugar as charged in the invoice. The papers which accompany the cargo, do not show what was the price of the hogshead, and if there is no appraisement, the collector has no mode of ascertaining the reduction except by the price of the sugar. To make an allowance for sugar imported from Porto Rico by this rule, and to refuse the abatement for the hogsheads, on importations from Cuba, would be to establish a different tariff for these two islands, and would, in effect, make it higher on the sugars of the latter than those of the former.

Independently, however, of this consideration, we think, for the reasons above stated, that where there is no appraisement, the reduction should be made on the whole dutiable value of the article; for no duty ought to be exacted beyond what the law has imposed; and if it is not practicable to ascertain the precise amount of the loss, the merchant ought not, on that account, to be made liable to a charge, which evidently was not intended to be imposed upon him. The same reasoning applies to the allowances upon the importations of molasses, both from Cuba and Porto Rico, in which the hogsheads are always separately charged. The reduction, in the opinion of the court, ought to be made in proportion to the dutiable value of the part lost.

The remaining question is, what duties were paid, under protest, within the meaning of the act of 1845 [c. 22; 5 Stat. 727]? That act requires that the protest shall be in writing, signed by the claimant, at or before the payment of the duties, and set forth, distinctly and specifically, the ground of objection. The protest of 9 April, 1847, cannot apply to payments previously made, and the plaintiff is not entitled to recover them; but it is sufficient to cover all subsequent payments, and a particular protest in each case is not required by the law. The object of the protest is merely to give notice to the officer of the government, that the importer means to claim the reduction, and to make known to the collector the grounds upon which he makes the claim. In these respects this protest is sufficiently explicit, and covers all the cargoes upon which the duties had not been finally assessed and adjusted by the collector. The protest is not required to be made on or before the payment of what are called the estimated duties; for this payment is necessarily regulated by the invoice quantity, as well as the invoice price. The importer cannot, at that time, know whether there has been any loss by leakage; nor can he know, after it has been ascertained by the weigher and gauger, whether the collector will exact duties upon the amount stated in the invoice. The protest is legally made, when the duties are finally determined, and the amount assessed by the collector; and a protest before, or at that time, is sufficient notice, as it warns the collector, before he renders his account to the treasury department, that he will be held personally responsible, if the portion disputed is not legally due; and that the claimant means to assert his rights in a court of justice. The payment of the money upon the estimated duties is rather in the nature of a pledge or deposit than a payment; for it remains in the hands of the proper officer, subject to the final assessment of the duties, and if more has been paid than is due (which is most commonly the case), the surplus belongs to the importer, and is returned to him.

Upon the whole, the court is of opinion, that the plaintiff is entitled to recover for the amount of the deficiency in the sugar and molasses, by leakage, as mentioned in the case stated; that the reduction ought to be made according to the dutiable value of the portion lost; and that the protest of 9 April, 1847, covers all the cargoes where duties had not before been finally assessed and adjusted by the collector. If the parties can, by agreement, ascertain the amount due to the plaintiffs, stating the account upon these principles, with interest from the times of payment, the court will give judgment in their favor for that sum. But if they cannot agree, the court will refer the papers to a commissioner, with directions to state the account upon the principles hereinbefore set forth. Judgment for plaintiffs.

NOTE [from original report]. Affirmed by the supreme court, at December term, 1849. [Marriott v. Brune] 9 How. [50 U. S.] 619.

[NOTE. Defendant brought error, and the supreme court, in affirming the decree of the

BRUNE (Case No. 2,053)
[4 Fed. Cas. page 480]

circuit court, assigned the following as grounds of affirmation: That the actual amount of the commodities arriving at the port was alone liable for duty, and not the amount shipped, especially as there was no proof that the loss of the sugar by drainage improved its quality; that the proviso in the eighth section of the act of 1846 (9 Stat. 43), setting forth "that under no circumstance shall the duty be assessed less than the invoice value, any act of congress to the contrary notwithstanding," was apparently not general in its application, but related to the enactment in the section in which it occurred, but, if general, the importer would not be estopped as to the statement of quantity in the invoice, as the duty should be assessed only on the quantity reaching home, and entered and ascertained by law by the measurer and weigher; that the words in the proviso, "less than the invoice value," meant the same as invoice price, —and the further ground that the written protest applied to all subsequent importations of a like character by the same parties. Marriott v. Brune, 9 How. (50 U. S.) 619.]