## Case No. 14,325.

### ULLMAN v. MURPHY.

[11 Blatchf. 354;[1] 18 Int. Rev. Rec. 156.]

Circuit Court, S. D. New York. Nov. 6, 1873.

CUSTOMS DUTIES—PROSPECTIVE PROTEST—STATUTORY REQUIREMENTS.

1. A prospective or continuing protest is not valid, under the laws now existing in relation to duties upon imports.

2. The 14th section of the act of June 30th, 1864 (13 Stat. 214), provides, that, on the entry

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

of any goods, the decision of the collector as to the rate and amount of duties to be paid on such goods, shall be final and conclusive, unless the importer shall, within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, give notice in writing to the collector, on each entry, if dissatisfied with his decision, setting forth therein, distinctly and specifically, the grounds of his objection thereto. The plaintiff, on paying duties, January 10th, 1871, on certain goods, added to a protest then filed by him with the defendant, as collector, in respect to the exaction of duties thereon, these words: "I intend this protest to apply to all future similar importations by me." On the 21st of January, 1871, the plaintiff entered for warehousing like goods, and, on the 20th of June, 1871, the defendant exacted, and the plaintiff paid, duties thereon, on a withdrawal entry thereof, at the same rate so protested against. In a suit to recover back the alleged excessive duties: Held, that such prospective notice was not a sufficient protest, under said 14th section.

[Cited in Haynes v. Brewster, 46 Fed. 476; Davies v. Miller, 130 U. S. 288, 9 Sup. Ct. 562.]

This was an action to recover back money claimed to have been erroneously exacted by [Thomas Murphy] the defendant, as collector of customs for the port of New York, for duties exceeding the true amount due upon certain goods imported by the plaintiff [Sigmund Ullman]. The parties respectively agreed to and read a statement of facts, in which it appeared that the goods in question were imported by the Aleppo, and were entered for warehousing on the 21st of January, 1871; that the amount of duties then claimed by the defendant thereon was liquidated on the 11th of February, 1871; and that, on the withdrawal entry, on the 20th of June, 1871, the defendant exacted, and the plaintiff paid, the excessive duty in question. On a previous importation of like goods entered December 10th, 1870, the defendant required the payment of duties at the same rate, and the plaintiff, on the payment thereof, on the 10th of January, 1871, filed due protest in respect to such last named exaction, and to such protest he added the words following: "I intend this protest to apply to all future similar importations by me." It was thereupon stipulated by the respective parties, that, if the court should be of opinion that such protest was a sufficient compliance with the 14th section of the act of June 30th, 1864 (13 Stat. 214), the jury should be instructed to render a verdict for the plaintiff for the sum claimed; and that, if the court should be of the contrary opinion, the jury should be instructed to render a verdict for the defendant —either party to be permitted to except to the decision of the court upon the question of law thus submitted and to review the same according to the practice of the court, on bill of exceptions, or otherwise, as advised. For the plaintiff it was insisted, that the notice thus given and filed was a sufficient prospective or continuing protest, applying to all like goods imported by the plaintiff, and satisfying the requirements of the acts of congress, which make a protest necessary in

order to entitle the importer to bring and maintain an action for money paid to the collector on an erroneous exaction. For the defendant it was insisted, that such prospective protest was insufficient, and that the action could not be maintained.

Sidney Webster, for plaintiff.

Thomas Simons, Asst. Dist. Atty., for defendant.

WOODRUFF, Circuit Judge, at the close of the argument, stated his opinion, in substance, as follows:

The act of congress of February 26th, 1845 (5 Stat. 727), provided, that no action should be maintained against any collector, to recover the amount of duties paid under protest, unless such protest was made in writing, and signed by the claimant, "at or before the payment of said duties." It appears by the case of Brune v. Marriott [Case No. 2,052], that Chief Justice Taney held that language sufficiently broad to justify him in sustaining an action brought by Brune to recover for duties paid upon sugar and molasses imported and entered after the protest was made, where the protest expressly declared the intent of the importer that it should apply to all his importations of sugar and molasses. There the protest was literally before the payment of the duties. The supreme court of the United States (Marriott v. Brune, 9 How. [50 U. S.] 619), on writ of error, affirmed the judgment and so, in effect, affirmed the sufficiency of a protest made in one case but, by its terms, declared to be intended to reach and embrace subsequent importations of a like character belonging to the same parties. This affirmance, however, was deemed by Mr. Justice Curtis to have rested on the "very peculiar" circumstances of that case, which, he says, were "relied on by the court as the reasons for a decision at which they manifestly felt great difficulty and hesitation in arriving." He, therefore, held, in Warren v. Peaslee [Case No. 17,198], that, where the importers added to a formal protest in relation to specific goods, the words, "You are hereby notified that we desire and intend this protest to apply to all future similar importations made by us," such prospective protest was not sufficient to entitle the importers to maintain an action for the amount of duties erroneously exacted on goods subsequently imported, and that a protest should be made in reference to the particular payment complained of. But, in the case of Steegman v. Maxwell [Id. 13,344], in this court, Mr. Justice Nelson, sitting with Judge Betts, then district judge, held a similar protest sufficient. Judge Betts, in delivering the opinion, adverts to the apparent hesitation of the supreme court in sustaining such protests, as a general rule, but he nevertheless affirms and approves it. Soon thereafter, the act of March 3d, 1857 (11 Stat. 192), was passed, and by the 5th section, it provides,

that, on the entry of any goods, the decision of the collector shall be final and conclusive, unless the owner shall, "within ten days after such entry," give notice to the collector, in writing, "setting forth therein distinctly and specifically his grounds of objection." Under this act, the like question of the validity or effect of such prospective or continuing protest was raised in this court, in Hutton v. Schell [Case No. 6,961], Judge Smalley, district judge for Vermont, holding the court. The same construction was given to the act of 1857 as had before been given to the act of 1845, and for like reasons, the cases above mentioned being cited and commented upon. Judge Blatchford, in Wetter v. Schell [Id. 17,470], declares it settled, in this district, that such a protest as to future importations is valid and effective under this act of 1857, and is so valid and effective, although the collector to whom it was delivered is no longer in office, and the action is brought to recover the amount of duties exacted by his successor or successors; and he states that Mr. Justice Nelson, in Chouteau v. Redfield [Id. 2,696], so decided. The result of these decisions under the act of 1857 is, that a requirement that a notice shall be given "within ten days after such entry" is satisfied by the giving of a notice ten or, it may be, twenty years before such entry; and that, although the statute declares that, on the entry of any goods, the decision of the collector shall be final and conclusive, unless the owner, &c., shall give notice to the collector, &c., it will be sufficient if the owner have given notice to any predecessor in office, immediate or remote, of the collector making the exaction. Whatever my own unaided judgment would have suggested concerning the question under the acts of 1845 or 1857, and notwithstanding various and impressive reasons and arguments urged upon me adverse to the construction given, especially to the latter act, I should not, in a case arising under that act, feel at liberty to regard it as an open question in this district. The construction I have mentioned having been given to it during many years, not only by the district judges holding the circuit court, but by Mr. Justice Nelson, my predecessor in this position and, by his relation to the supreme court, my superior in office, I should regard myself as bound by their decisions. The government has not seen fit to take those decisions to the supreme court for consideration; and it is not fit that I should review them, even though they seemed doubtful.

The present case did not arise under either of the acts thus far mentioned. It is the act of June 30th, 1864 (13 Stat. 214), by which this case is governed. The 14th section of that act provides, that, "on the entry of any vessel, or of any goods, * * * the decision of the collector of customs, at the port of importation and entry, as to the rate and amount of duties to be paid on the tonnage of such vessel or on such goods,

* * * shall be final and conclusive against all persons interested therein, unless the owner, * * * in the case of duties levied on tonnage, or the owner, importer, * * * in the case of duties levied on goods, * * * shall, within ten days after the ascertainment and liquidation of the duties by the proper officers of the customs, as well in cases of merchandise entered in bond, as for consumption, give notice in writing to the collector, on each entry. if dissatisfied with his decision, setting forth therein, distinctly and specifically, the grounds of his objection thereto." This act has not heretofore been under judicial consideration, and I am now called upon, for the first time, to give an opinion of its meaning, with reference to a prospective or continuing protest. Had there been no change in the law other than from the words, "within ten days after such entry," to "within ten days after the ascertainment and liquidation," it would be difficult to withdraw the present case from the operation of the decisions I have mentioned, and I must have held that those decisions bound me to give the act the same construction given in this district to the previous acts. They do not, however, bind me to go any further. The act does not stop with that change. It provides, that such notice shall be given "on each entry." Whether these words were inserted in view of the difference between the construction given to the previous law by the court in this district and the court of the First circuit, I do not know. But they are significant words, and, by sound rules of interpretation, I must assume that they have a meaning and that congress intended that meaning. Under the act of 1857, a question had arisen in relation to goods entered for warehousing, whether the language, "ten days after such entry," meant ten days after the first entry, or whether the protest might be made within ten days after the withdrawal entry, when the duties were paid; and, in Iselin v. Barney [Case No. 7,103], Mr. Justice Nelson held, that a protest within ten days after the withdrawal entry, when the duties were paid, was permitted by the act. He placed his decision mainly upon the ground that the duties were not ascertained and liquidated when the entry for warehousing was made. Ten days, according to the course of business at the custom-house, would often elapse before such ascertainment. No uniform or certain time elapsed before such ascertainment, and no notice was given thereof to the importer when the duties were ascertained. It is apparent, that the act of 1864 obviated the embarrassment which led to this construction of the act, and, at the same time, enabled the government to finally settle the amount of duties to be paid, without waiting to the end of the three years, during which the goods might remain in bond, and be then met by the protest of the importer.

The act fixed the time of the ascertainment and liquidation of the duties as the date when the ten days allowed for the protest should begin. It is urged, that this is all the change intended by the law. This, however, gives no meaning to the words, "on each entry." These latter words do not mean, and are not claimed to mean, on each entry, whether for warehousing, or for withdrawal for consumption, so as to require a protest on the withdrawal of the goods from the warehouse, i. e., on each entry of the same merchandise, one protest when entered in bond, and one when entered for withdrawal. It would be impossible to do this within ten days after the ascertainment and liquidation of the duties, for, such withdrawal for consumption may not be made for more than two years after such ascertainment. On such a construction, compliance with the statute would be impossible. It is suggested, that "on each entry" means no more than that, whether the entry be in bond or be for consumption. in either case, the protest must be made within ten days after the ascertainment and liquidation of the duties; but this makes the expression, "on each entry," add nothing to what had already been distinctly expressed, and no reason appears for its use. "Shall, within ten days after the ascertainment and liquidation of the duties, * * * as well in cases of merchandise entered in bond as for consumption," is clear and distinct, and imports that, in either case, the protest shall be within ten days after the duties are ascertained. Why, then, was it added, "on each entry?" The reading which alone gives meaning and effect to those words, is, that in all cases, whether of entry in bond or for consumption, the owner shall give notice in writing. on each entry, to the collector, &c., not meaning on the paper or record called the entry, but, in respect of each entry. This gives meaning and effect to all the language of the section, and it serves a very important purpose. Whether congress had in view the reasons assigned by Judge Curtis for his opinion, whether the motive to the introduction of the words, "on each entry," was to obviate the disadvantage of a difference in the construction of the law or the practice in different collection districts, or to do away with a practice which permitted the importer to lie by, as it might be, for years, and then claim the benefit of a protest given years before, and to some former collector, we are not informed, save by the terms of the act. Those terms are apt to work such a result. It is my duty to assume that they were intentionally employed, and were, for the first time, introduced into the law relating to this subject for some useful purpose, and I ought to give them meaning and effect according to the rules which govern the construction of statutes. In view of, to say the least, the doubtful construction heretofore given in this dis-

trict to the former acts, the change of the phraseology, in this respect, in this act of 1864, seems to me especially significant. I cannot give to that change any operation or effect without holding, that the notice to be given to the collector must specify the entry or entries to which it applies, and that the statute is not satisfied by a protest declared by the importer to apply "to all future similar importations" by him. I might add reasons why this reference to "similar importations" ought not to be held sufficient, even if a notice applied to goods definitely and precisely described and identified was held good, as was the case in Marriott v. Brune [supra]. This distinction is, in some degree, alluded to in the opinion of Judge Curtis. The litigation that has arisen ·out of the various laws fixing the duties upon imports, furnishes abundant evidence that the question, what goods are "similar," under the tariff acts, is often a perplexing one, and a question upon which the importers and the officers of the customs very often disagree. The protest of the importer ought certainly to be in such clear terms that the officers of the customs should know exactly to what goods it relates; and, if a protest applied to all future importations can be permitted, this explicitness is of especial importance. Otherwise, duties may be levied and received on goods for some years, without even a suspicion that the importer claimed that such goods were, under the tariff laws, to be deemed "similar" to those mentioned in the protest ·long before filed.

My conclusion, .that, under the statute of 1864, such prospective or continuing protest as to future importations is not valid and effective, and that the protest in this case does not satisfy the statute, requires, according to the terms of the stipulation made by the parties, that the jury render a verdict for the defendant. Conclusions formed upon the presentation and argument of a question for the first time raised, may properly be reviewed, and the court will give to the plaintiff, if he so desires, time and opportunity for such review. and a more deliberate examination of the subject in this court, or in the court of last resort.