UNITED STATES *v.* McCOY. (No. 1313).[1]

PROTEST COVERING TWO ENTRIES WITH THE SAME RATE OF DUTY.

A protest may cover one or more entries of goods described in more than one invoice. Paragraph N of section 3, tariff act of October 3, 1913, relative to protests, was framed in view of a practice in the department, confirmed by the courts extending over many years, by which a single protest covered more than one entry. The words "claim in writing" appearing there instead of "protest in writing" can not be taken to alter a practice so established and so recognized.

United States Court of Customs Appeals, May 4, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7515 (T. D. 33981).

[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*William A. Robertson*, special attorney, on the brief), for the United States.
*Comstock & Washburn* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The importers filed a protest covering two entries of merchandise of like character, each entry having been made within 30 days prior

---

[1] Reported in T. D. 34445 (26 Treas. Dec., 783).

to the filing of the protest, the merchandise having in each instance been subjected to the same rate of duty by the collector, and the protest making the same claim as to each entry, that it was dutiable under another paragraph of the act. The collector exacted a protest fee of $2, claiming that as the protest related to two separate entries it amounted in effect to two protests rather than one. By appropriate proceedings the importer presented for decision to the Board of General Appraisers the validity of this ruling. The contention of the importer was sustained, the board holding that the paper filed was but a single protest, and that but a single fee should have been exacted. From this decision the Government appeals and presents the question to this court for decision.

The issue is stated in the brief of the Assistant Attorney General as follows:

The Government holds that a protest in law is visible or audible evidence given to an official of the involuntary character of the payment of a demand which serves, if action be later brought, to avoid the operation of the rule that a voluntary payment can not be recovered; while the importers argue that the protest is itself the complaint which commences the action.

In ascertaining what is meant by the protest in paragraph N of section 3 of the act of 1913, it is important to ascertain in what sense the term was employed in customs procedure prior to and at the time of its enactment. The term "protest" was not the term employed in the customs administrative act of 1890, but in section 14 of that act the remedy was afforded to one who, dissatisfied with such decision, should give notice "in writing to the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and if the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon."

In Andrews' Manual of Customs Laws, published in 1904, this provision is referred to as providing for a protest (see p. 539), and, what is more important, the Customs Regulations of 1899, referring to the protest and the requirements, uses the word "protest" all the way through, and this same course is pursued in the treasury regulations of 1908, where, in article 1069, it is said "the notice of dissatisfaction filed by the importer is for convenience called a protest," and so in board decisions and in decisions of this court, the term is employed to indicate the notice in writing required by the laws to protect the rights of the importer. It will be seen, therefore, that the term "protest" came to have a distinct and clear meaning in customs law. The question is whether such protest or notice in writing required by law is what is referred to by the term as employed in paragraph N, and could it include more than one entry.

In Andrews' Manual of Customs Laws, at pages 539–540, are given forms of protest which are adapted to claims in a single protest on

any number of entries, showing the entry number, the vessel, when entered, when liquidated, and marks and numbers. Not only is this true, but the record in this case establishes that it was common practice prior to the act of 1913 to include in a single protest claims under various or different entries. So that when the Congress used this term in 1913, it must have had in mind this departmental and court practice extending over a period of years, and it is no introduction of a new meaning to the term to give it effect as relating to the written document or notice of dissatisfaction filed by the importer, nor to give it a meaning which includes such a written document making complaint of more than a single entry. This was consistent also with the provision recited in the Customs Regulations, article 1069, according with the statute, namely:

That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise * * * shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise * * * shall, within ten days after "but not before" such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within ten days after the payment of such fees, charges, and exactions, if dissatisfied with such decision give notice in writing to the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto.

Now, in the face of this provision, which constituted the customs regulations, in paragraph 1460 of 1899 and paragraph 1069 of the Customs Regulations of 1908, the board and the court have since permitted, and there have been frequently used, protests covering more than a single entry, thus involving the view obtaining at the bar and apparently in the courts that the expression "setting forth therein distinctly and specifically and in respect to each entry and payment the reasons for his objections thereto," implied that there might in a single protest be occasion to refer to more than a single entry or payment and to state objections to each.

So far as the question has been directly dealt with by the courts, the holdings sustain this right. Under the act of 1845 (5 Stat. L., 727), providing that no "action shall be maintained against any collector to recover the amount of duties so paid under protest unless the said protest was made in writing and signed by the claimant, at or before the payment of said duties, setting forth distinctly and specifically the grounds of objection to the payment thereof," it was held that a protest might cover two or more payments, and, furthermore, that it might be so framed as to cover all future importations. Brune v. Marriott (4 Fed. Cas., 475, No. 2052), affirmed in Marriott v. Brune (9 How., 619).

In section 14 of the act of 1864 (13 Stat. L., 214) it was provided that:

The decision of the collector of customs at the port of importation and entry as to the rate and amount of duties to be paid on the tonnage of such vessel or on such

goods, wares, or merchandise, and the dutiable costs and charges thereon, shall be final and conclusive against all persons interested therein, unless the owner * * * importer, consignee, or agent of the merchandise * * * shall, within ten days after the ascertainment and liquidation of the duties by the proper officers of the cus toms, as well in cases of merchandise entered in bond, as for consumption, give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth therein, distinctly and specifically, the grounds of his objection thereto.

The court, in Ullman *v.* Murphy (24 Fed. Cas., 506), held that a protest of future importations was no longer permissible. Construing the phrase "on each entry" the court said:

The reading which alone gives meaning and effect to those words is that in all cases, whether of entry in bond or for consumption, the owner shall give notice in writing, on each entry, to the collector, etc., not meaning on the paper or record called the entry-but *in respect of each entry.* This gives meaning and effect to all the language of the section, and it serves a very important purpose. * * * I can not give to that change any operation or effect without holding that the notice to be given to the collector must specify the entry or entries to which it applies, and that the statute is not satisfied by a protest declared by the importer to apply "to all future similar importations" by him.

The language of the opinion was not all necessary to a decision of the case. It is significant, however, that later statutes have employed the very language of Judge Woodruff by substituting for the phrase "on each entry" "in respect to each entry or payment." If this change in phraseology was suggested by the decision, it would not be a wide stretch to say that the purpose was to give effect to the other language of the decision, which clearly implies that more than one entry may be included in a single protest. But without reliance on this we are impressed by the practical construction of the language employed, as indicated above.

It comes then to a question as to whether, by the language employed in subdivision N of section 3, there has been any intentional departure from or condemnation of this practice. This subdivision contains much of the same language that was embodied in the customs administrative law of 1890 and repeated in the tariff act of 1909, down to the point of substituting the words "protest in writing" for "claim in writing." It reads as follows:

N. That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, or upon merchandise on which duty shall have been assessed, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, within thirty days after but not before such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within fifteen days after the payment of such fees, charges, and exactions, if dissatisfied with such decision imposing a higher rate of duty, or a greater charge, fee, or exaction, than he shall claim to be legally payable, file a protest or protests in writing with the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and if the merchandise is entered for

consumption shall pay the full amount of the duties and charges ascertained to be due thereon. Such protest shall be deemed to be finally abandoned and waived unless within thirty days from the date of filing thereof the person who filed such notice or protest shall have deposited with the collector of customs a fee of $1 with respect to each protest.

In the present case, the paper filed is in the form of a protest, protesting against the imposition of duties upon the like character of merchandise under the same provision of law and making claim of the same error therein in each case, all occurring within the period fixed by the statute, and setting out the same grounds of complaint, so that it is conceded to be sufficient either as a single protest or as two protests. There is no difficulty in finding that it points out with respect to each entry and payment the reasons for the objection of the importer thereto. Is there in this language a purpose to treat this protest in writing as anything other or different than the claim in writing which had been accorded the name of protest by customs administrative officers and by the courts during the whole history of the customs administrative act, and is the requirement for setting forth therein distinctly and specifically and in respect to each item or payment the reasons for objections thereto any more specific or any more evidence of a purpose to preclude the inclusion, in a single protest, of more than a single entry than was afforded by the previous legislation? We think not. On the other hand, we can not escape the conclusion that Congress followed as closely as the change in the form of words from "claim in writing" to "protest" or "protests" would admit the precise phraseology which had previously been contemporaneously construed by the board, by the department, and impliedly by the court. If we are right in this, then the provision that the protest shall be deemed "abandoned and waived unless within 30 days from the date of filing thereof the person who filed such notice or protest shall have deposited with the collector of customs a fee of $1 with respect to each protest" is clearly referable to such protest as was common when this provision was enacted and relates to the protest which may cover one or more entries.

Under the act of 1890 and the like provision in 1909, the claim in writing (protest) was something more than a registering of dissatisfaction to the end of preserving rights if a *future* action should be taken. It was itself the institution of a proceeding to test the validity of the action of the collector and partook of the nature of a pleading, and was so treated and construed. It might, therefore, very properly include all claims having a like basis where the parties were the same, the question was the same or kindred, and—multifariousness being avoided—there was no apparent reason why such claim in writing might not relate to more than one entry so long as the importer set forth therein "distinctly and specifically, and in respect to each entry

or payment, the reasons for his objections thereto." The office of the protest provided for by paragraph N (which now assumes in the statute the name long since accorded to it in practice) is the same precisely as was that of the corresponding paper provided for under the previous law under the title of a "notice in writing." No narrow distinction between the two should be admitted. The language, "file a protest or protests in writing with the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto" does not establish a purpose to change the practice. The introduction of the plural here might have a wider influence but for the fact that the language "in respect to each entry or payment" is still retained and is referable as well to "protest" as to "protests."

As was suggested in the opinion of General Appraiser Cooper, the words "distinctly and specifically and in respect to each entry or payment" modify and explain the manner of setting forth and by implication this manner of setting forth, including as it does a specification in respect of each entry or payment, implies that the protest may cover several entries so long as it sets forth the claims made in respect to each.

The plural of this sentence was doubtless a survival of the House measure, which provided that—

> Each protest shall be limited to a single article or class of articles and to a single entry or payment, and issues of classification shall not be joined with other issues in the same protest.

It is significant that the Senate struck out this provision. The Assistant Attorney General concedes that in view of the history of this legislation, the filing as against a single entry of a number of statements in writing relating to various items of merchandise included in the same entry amounted to but a single protest within the provision requiring a fee on each protest. If this be so, on an entry requiring for convenience segregation of issues, it would seem that no rule against prolixity or multifariousness is violated when the protest covers all like issues falling within the period of time fixed by the statute. The fact that the requirement of return refers to a return of the invoice in the singular is not persuasive, as a single entry may include goods covered by more than one invoice, which under the Government's interpretations could all be included in a single protest.

The singular may be read as including the plural and the plural as though written in the singular, if the context warrants it. State *v.* Kansas City, etc., R. R. Co. (32 Fed., 722); Ellis *v.* Whitlock (10 Mo., 781); Jocelyn *v.* Barrett (18 Ind., 128).

We think the board reached the correct conclusion, and the decision is *affirmed.*