(A.R.D. 102)

UNITED STATES *v.* A. N. DERINGER, INC.

Entry No. A–4897.

Third Division, Appellate Term

(Decided March 11, 1959)

*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the appellant.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the appellee.

Before JOHNSON, DONLON, and RICHARDSON, Judges

DONLON, Judge: Appellee (plaintiff below) appealed for the reappraisement of certain doors, constructed with patented ventilation, which were imported from Canada at Rouses Point, N.Y. The trial judge, from whose decision the Government has taken this appeal, found on the evidence of record that there was neither a foreign value nor an export value for such or similar merchandise, nor any United States value for such or similar merchandise. Accordingly, the trial judge held that the appraisement of these doors should be on the basis of the cost of their production, and he found the values of the doors in reappraisement on that basis.

Errors cited by the Government in this appeal for review of his decision include alleged errors in the findings. The Government also cites, presumably not merely by way of complaint but as reversible error, an alleged abuse of discretion on the part of two of the trial judges before whom this reappraisement came in the course of a protracted trial at Rouses Point and New York, in that they permitted plaintiff (over defendant's objection) twice to reopen the proceeding in order to adduce further evidence. The Government also alleges as error in the decision of the final trial judge his acceptance (so the Government asserts) of certain interlocutory findings of one of the previous trial judges.

This case illustrates very well the difficulties that confront importers, and, indeed, the court itself, in many reappraisement proceedings. The burden here of negativing six possible bases of appraisement (three, but each to be separately negatived as to *both such and similar* merchandise) had to be met by the importer, before he could show the claimed statutory basis of appraisement of this merchandise, namely, cost of production in Canada.

The duty of the court in appeals to reappraisement is not, as in most litigation, judgment as between the parties with respect to

controverted issues. However difficult it may be and often is to arrive at such judgment, Congress has laid on the court a different burden in appeals to reappraisement, that of ascertaining and determining what the value of merchandise is for purposes of tariff and related exactions. This may turn out to be the value which the appraiser found, or it may be the value claimed by the importer; but, also, it may be some other value, different from either. What is important is that the court has to find a value and to state the facts on which that finding is made, and for this purpose there must be proofs.

Persistently to oppose nearly every effort of the importer to bring into the record facts necessary to such finding and regular objection to almost every attempt to prove a case, do not well serve the judicial duty which Congress has assigned this court in reappraisements.

That the issues and the evidence in this case are far from simple, is evident both from the record and the briefs. The record was introduced by appellee (plaintiff below). Appellant (defendant below) introduced no proofs.

These doors, called "Unik" No. 90 doors, have what is described as a unique patented ventilating feature. While appellant alleges error in the findings of the trial judge that there were not free offerings of *similar* merchandise either in Canada or in the United States at the time of this exportation, appellant's brief cites no evidence to support its argument on this point. A patented feature does not, of course, bar the possibility that similar merchandise may exist, within the purview of section 402. However, plaintiff below introduced testimony that there was no similar merchandise, that these doors are unique, and defendant below adduced no evidence. Cross-examination failed to impugn the direct testimony that there was no similar merchandise. We hold that the record sufficiently supports the findings below that there were no such free offerings of *similar* merchandise as section 402 contemplates.

Were there free offerings of *such* merchandise, within the purview of section 402?

The manufacturer did not freely offer "Unik" doors for export to the United States, but it did sell the doors for export to a selected class of distributors and only to them (Rouses Point hearing, R. 6; New York hearing, R. 12, 13). Plaintiff thus has negatived existence of free offerings of such merchandise for export. Export value is not a proper basis for appraisement.

The record as to foreign value for *such* doors shows that the Canadian manufacturer of these "Unik" doors sold in Canada both to wholesalers and to retailers (Rouses Point hearing, R. 34), either in carload lots (said to be a minimum of 600 doors to a car, but sometimes as many as 1,100 doors, according to size) or in less than carload lots (Rouses Point hearing, R. 18). Less than carload lots ranged

from 1 door up to 30 or more (plaintiff's exhibit 1-H). Sales to wholesalers with warehouse facilities were at 10 per centum discount. Retailers paid list prices net (Rouses Point hearing, R. 35, 36). The manufacturer sold to but a few wholesalers, with a view to territorial distribution by them (Rouses Point rehearing, R. 11). Sales to wholesalers were made with the understanding that the wholesaler would sell, in his allotted territory, only to retail lumber dealers and not to "consumers" and that he would sell at the same price at which the manufacturer sold to retail lumber dealers, neither lower nor higher (Rouses Point rehearing, R. 11 to 19). The retail lumber dealers sold to contractors, consumers, owners of public buildings, and to some others, such as buyers of lumber. "They cannot sell anybody else but consumers or contractors; they cannot sell to the wholesaler; they are paying more money for their doors than the wholesaler is paying for his. They sell only to a class below the wholesaler." (Rouses Point rehearing, R. 20, 21.) This group of buyers constitutes the "consumers," those who use the doors. Lumber dealers were not restricted in their sales to consumers. They could sell to any one at any price (Rouses Point rehearing, R. 24, 26).

It appears, then, that there were not free offerings of these doors in Canada by the manufacturer or by the wholesalers; but there were free offerings by the retailers, or lumber dealers, to consumers. The problem is whether such retail offerings meet the conditions of section 402(c). Were the offerings by retailers made in the usual wholesale quantity for these doors? Was there a usual wholesale quantity?

In *United States* v. *Livingston & Southard, Inc.*, 23 C.C.P.A. (Customs) 214, our appeals court considered just such a problem as this and reviewed prior decisions on that issue.

While it is true that in some cases the sale of a single article may be regarded as a sale in a wholesale quantity, and we have in a number of cases by implication so held, we think that the fact that the affidavit of said Mostyn states that the seller "has at all times sold identical rotoscopes in the home market in England *in retail quantities of one directly to the user*" (italics ours), coupled with the fact that there is uncontradicted evidence that there were sales and offers for sale in wholesale quantities of more than one at a time in the principal markets of England, warranted the holding of the appellate division that sales and offers for sale of one at a time were sales and offers for sale in retail quantities and not in wholesale quantities. [Italics quoted.]

This view is supported by the decision of this court in the case of *Keve & Young* v. *United States*, 11 Ct. Cust. Appls. 94, T.D. 38747. In that case this court said:

Machines are sold wholesale and in quantities of more than a single unit to dealers in Ireland and for export to other countries and that they are so sold definitely establishes not only that a single unit is not per se a wholesale quantity, but that the sales of single units to the ultimate consumer in Great Britain for use and not for resale, are not wholesale transactions. * * *

\*      \*      \*      \*      \*      \*      \*

In the case of *G. W. Pleissner* v. *United States*, 16 Ct. Cust. Appls. 507, T.D. 43237, this court held that the language "in the usual wholesale quantities" was intended by the Congress to refer to a major portion of the sales or offers for sale in wholesale quantities of merchandise. In the case of *United States* v. *Minkus*, 21 C.C.P.A. (Customs) 382, T.D. 46912, after citing with approval the case of *Pleissner* v. *United States, supra*, we said:

> It is just as evident, however, as was held in the case of *G. W. Pleissner* v. *United States, supra*, that the Congress did intend, by the use of the word "usual," to limit the words "wholesale quantities" to such wholesale quantities as were usually, customarily, and ordinarily freely offered for sale to all purchasers in the principal markets of the country of exportation, in the ordinary course of trade; and that the language "in the usual wholesale quantities" was intended "to refer to a major portion of the sales or offers for sale," in wholesale quantities, of imported merchandise, subject, however, to the further limitation hereinbefore indicated that, although the word "quantities" must be applied in the plural, in the sense hereinbefore stated, the statute does not contemplate two or more "usual wholesale quantities" having two or more market values or prices. On the contrary, the statute does contemplate, we think, but one—the *usual*—having but one "market value" or "price * * * at which such or similar merchandise is freely offered for sale to all purchasers," at the time of exportation to the United States.
>
> If the courts below were correct in holding, as they did, that the affidavit and the manufacturer's price list, disclosing several wholesale quantities—eight in all, each having a different market value or price—without evidence tending to establish which of the eight was the *usual*, was sufficient to establish a foreign value for the merchandise, there would be eight wholesale quantities, having eight different market values or prices, and as many different foreign values for such merchandise, without regard to the costs of containers, coverings, and other costs, charges, and expenses "incident to placing" it in "condition, packed ready for shipment to the United States." Such a situation is, obviously, not contemplated by the statute [pp. 217, 218]. [Italics quoted.]

It is doubtful that sales of these doors by retailers to consumers in small retail lots are the free offerings in usual wholesale quantities which section 402 contemplates. But if we assume, *arguendo*, that retail sales are such sales as Congress intended in section 402, we find a record that shows such sales in many quantities and none that is "usual." The appraiser considered one to nine doors the usual wholesale quantity. There is no evidence to support this as the quantity usual for wholesale lots. There is evidence of sales in many different quantities. Indeed, there are so many quantities that none appears to be "usual" in the statutory sense, even in these retail sales.

As to United States value, the distributors to whom the above Canadian manufacturer sold "Unik" doors for export to the United States were assigned areas. Outside the assigned area, they agreed not to sell (New York hearing, R. 12, 13). Within his area, a distributor sold only to retail lumber dealers, for resale by them to consumers (Rouses Point hearing, R. 38, 40). The United States

retail lumber dealer could sell to any one, as could his Canadian counterpart (Rouses Point hearing, R. 39).

Here, as in the case of foreign value, the proofs negative any *usual wholesale quantity* in sales to consumers. There is, besides, the basic doubt that retail sales are what Congress had in mind in setting up the standard of *usual wholesale quantity*. The intention of Congress was not to make the quantity of sales usual in retail transactions the standard for valuing imported goods for duty purposes. It is necessary to read the condition as an entity. Congress has specified the usual wholesale quantity, not the usual retail quantity.

Appellee (plaintiff below) has shown that offerings of these "Unik" doors in wholesale quantities were not free offerings, either in Canada or in the United States; that the free offerings were never at wholesale but only at retail; and that retail offerings were in a variety of quantities, none usual.

Appellant argues that cost of production value, as found by the trial judge, is not supported by competent evidence as to the value component allowed for general expenses under section 402(f), subparagraph (2). Appellant argues, therefore, that the values which the appraiser found are proper.

The appraiser's values were shown to be values based on an asserted foreign value, which the trial judge found nonexistent. The only way the appraiser's values could prevail here would be on a finding that, notwithstanding the fact that appellee (plaintiff below) has negatived the presumption of correctness which attaches to the appraisement, it has failed to prove some other value. It seems to be the gist of appellant's case, at this point, that appraised values must prevail, however erroneous they are shown to be, because no other values have been shown by the proofs of record. The deficiency in such proofs, so appellant avers, is in respect to the allowance for general expenses, because the testimony does not itemize such expenses.

Appellant advanced this same argument in *Philipp Wirth* v. *United States*, 23 C.C.P.A. (Customs) 283, with respect to expenses for cost of materials, fabrication, manipulation, or other process, the cost of production component defined in section 402(f)(1). Our appeals court rejected that argument:

It will be observed that this section requires, in order to establish cost of production, the proof of four principal items which are numbered (1) to (4), inclusive. The appellate division was of opinion, and so held, that in order to establish the elements of cost of production found in said subsection (1), the cost of materials, fabrication, and manipulation must be broken down and itemized so that it might be ascertained, separately, how much the materials cost, how much was expended for labor, and any other items which might enter into the production costs mentioned in said subsection (1).

\* \* \* \* \* \* \*

As we view the case, but one question is involved. Was the judgment of the appellate division correct, insofar as it found that to establish item (1) of the

subsection of said section 402(e) the various items included therein must be separately shown, or, as stated by counsel, "broken down" and given in detail? The only authority cited for such a holding is the case of *The Gevaert Co. of America* v. *United States, supra.*

We have had our attention called to no other authority or provision of law applicable to the point at issue.

The *Gevaert* case was first heard by Judge McClelland in 1933, the imported goods being photographic film. The only proof as to cost of production was an affidavit giving the cost of production of each item at a gross sum, no itemization as required by section 402 of the Tariff Act of 1930 being made. This proof was held to be insufficient to prove cost of production.

In Reap. Dec. 3128, this judgment came before the Third Division of the Customs Court, and the judgment was affirmed. There seems to be nothing in these cases which forms any basis for the holding that under the Tariff Act of 1922, the items of cost provided for in said subsection (1) must be shown in detail in order to constitute proof of cost of production.

As a matter of fact, it seems to us to be plainly indicated by the said section and its arrangement, that the Congress intended the cost of production to be shown and to be itemized, the items to consist of the four elements which are separately enumerated in said section 402(e). If further itemization had been required, we have no doubt the Congress, in drafting the act, would have so provided. The fact that the Congress did not do so plainly evinces that no further itemization was required.

The appellate division determined this matter solely upon the theory that the statute requires the breaking down, or further itemization, of the information covered by said sub-paragraph (1). It did not consider the evidence offered on cost of production. This was, in our opinion, error. The evidence should have been considered. What it did, or did not, disclose, and the weight to be given to it, are matters committed to the jurisdiction of the court below, and are not within the jurisdiction of this court [pp. 286–287].

Mr. Raymond Roberge testified (Rouses Point hearing, R. 9, 11, 12) that the "overhead" expenses for the various door sizes before us were as follows:

| 2′ wide or less, | $0.72 |
| 2′4″ wide, | $0.77 |
| 2′6″ wide, | $0.79 |
| 2′8″ wide, | $0.81 |

These are the amounts which the trial judge found as general expenses, allowable under section 402(f)(2). The record before us and the decision of our appeals court in *Philipp Wirth* v. *United States, supra,* amply support his finding.

Having found that the record as developed supports the findings of the trial judge, we now turn to appellant's allegation that the action of two different trial judges in setting aside submission, on plaintiff's motion and over the objection of defendant, was such an abuse of judicial discretion as to constitute reversible error.

Cases cited in the briefs which relate to actions before the old Board of General Appraisers are not helpful. However, *United States* v. *International Graphite & Electrode Corp.,* 25 C.C.P.A. 74,

is cited both by appellant and appellee. In it, our appeals court considered a situation that, in many respects, was analogous to this. We quote from the opinion as follows:

It is within the inherent power of courts of the United States, in the absence of a statute to the contrary, to reopen a case for the purpose of permitting the introduction of additional evidence, or for any other purpose "consonant with justice and a correct decision" at any time before a final judgment has been entered. The exercise of that power lies within the sound discretion of the court, and is not subject to review, unless there has been an abuse of such discretion. Ordinarily, such power is exercised on motion by one of the parties. That a United States court has the power to reopen a case on its own motion for the purpose of permitting the introduction of additional evidence in the interest of justice, so long as formal notice is given the parties whose rights are to be affected so that they may be present and cross-examine the witnesses called, is not open to serious question. See 64 C.J. §§ 1011, 1012, 1013, 1014, and 1015, pp. 1204, 1205, and 1206; G. Amsinck & Co. v. Springfield Grocer Co., 7 F. (2d) 885.

It is true that, under section 501 of the Tariff Act of 1930, it is the duty of the trial judge sitting in a reappraisement proceeding to determine the value of imported merchandise "after affording the parties an opportunity to be heard," and that section 518 of that act specifically authorizes the trial court, in such a proceeding, to grant a rehearing or retrial when, in its opinion, the ends of justice so require. The provisions of those sections, in our opinion, neither expressly nor impliedly prevent the trial court from conducting trials in reappraisement proceedings in a judicial manner, and the Congress must have intended to invest such court with large judicial discretion (possessed by other trial courts of the United States) over the conduct of the trial so that its decision, "which becomes the basis of all subsequent proceedings," as stated by this court in the case of United States v. F. W. Woolworth Co. et al., 22 C.C.P.A. (Customs) 184, 191, T.D. 47126, may be judicial in character as well as in name. See 4 C.J. § 2781, p. 810, and cases cited in note 42.

We are of opinion, therefore, that the trial court had the power, within its judicial discretion, to reopen the instant case for the submission of additional evidence, and that the exercise of such power is not subject to review unless there has been an abuse of such discretion.

Obviously, the power to reopen a case after it has been submitted by the parties should be exercised only in those exceptional cases where the administration of justice would seem to require it, and where neither of the parties would be prejudiced by such action.

The trial court was of opinion in the instant case that justice and fairness required that the case be reopened for the purpose of the submission of such additional evidence as the parties might deem proper, and, on its own motion, it was so ordered. Both parties had formal notice of the court's action and were afforded the opportunity, which was fully exercised by them, to be present at the trial and to submit such evidence as they desired.

No claim is made here that the Government has been prejudiced in any way, or has suffered any injustice as a result of the reopening of the case. We are unable to hold, therefore, that the trial court's action amounted to an abuse of its discretion. See Alaska United Gold Min. Co. v. Keating, 116 Fed. 561, 565 [pp. 77, 78].

The issue as to judicial discretion is not whether we, or any one of us, would do precisely what another judge has done. We do not substitute our discretion for the discretion of our colleagues who took

those actions of which the Government complains. They were of opinion that justice and fairness required reopening this case so that additional evidence might be submitted. Both parties had notice. Both were present thereafter at trial, and participated in trial.

We are unable to find that the actions of the trial judges amounted to an abuse of discretion or that the decision below should be set aside on that ground.

Finally, there remains for disposition the contention of appellant that there is error in the findings of the final trial judge, in that he accepted the "conclusions" of a prior judge "as binding upon him." It may be that Government counsel had his tongue in cheek in phrasing this argument. For Judge Rao clearly states, in his decision below, that *he* reviewed the entire record as developed and that he based his findings on that record. This argument lacks both substance and merit.

We adopt and incorporate herein by reference findings of fact Nos. 1 to 11, inclusive, made by the court below. We also adopt and incorporate herein by reference conclusions of law Nos. 1 to 4, inclusive, made by the court below.

The judgment of the trial court is affirmed.

Judgment will be entered accordingly.