MAY 24, 1960

Reap. Dec. 9717.— J. J. Boll et al. v. United States.

MEMORANDUM TO ACCOMPANY ORDER

LAWRENCE, Judge: These 22 appeals for a reappraisement enumerated in the attached schedule and made a part of this decision were filed pursuant to the provisions of section 501 of the Tariff Act of 1930 (19 U.S.C. §1501).

The merchandise to which these appeals relate consists of steel twist drills, exported from Germany by R. Stock & Co. to Avildsen Tools & Machines, Inc., the real importer,—the plaintiffs herein acting as customs brokers.

Entry of the merchandise was made at the invoiced and entered values claimed by plaintiffs to be the export values.

Appraisement was made on the basis of foreign value of similar merchandise based upon the exporter's catalog prices.

The importation consists of two classes of twist drills, one made of carbon steel, the other of high-speed composition steel.

It is the claim of plaintiffs that the drills are neither such nor similar to those sold for home consumption in the country of exportation and that the invoiced and entered values are the export values, as defined by law.

The drills in controversy are of various sizes in so-called "American lengths." Plaintiffs claim that there is no similar merchandise to that

now before the court, asserting that the sizes and lengths of the drills imported are stated to be in "inches" or fractions thereof while those sold for home consumption differ in other respects, referred to, *infra*, and in Germany are said to be in the metric system. Plaintiffs contend, further, that the drills sold for home consumption could not be used for satisfactory drilling jobs in large industries.

Adversely, the Government contends that the merchandise is similar within the meaning of the statute whether or not the sizes are stated in inches or in the metric system; that they are composed of the same materials and are used for the same or similar purposes. The Government further contends that plaintiffs have failed to establish a usual wholesale quantity and that proof of export value is lacking.

At the trial, two witnesses were called to testify, one for the plaintiffs, the other for the defendant. The oral testimony was supplemented by the introduction of documentary proof and a physical exhibit. The documents consist of collective exhibits 1 through 9, exhibit 10 and collective exhibit 11, collective exhibits B, C, and D, exhibit E, and a sample drill, exhibit A.

Plaintiffs' witness, Herman Rhauda, testified at considerable length. The substance of his testimony deemed relevant here follows:

From September 1, 1939, to August 31, 1954, he was export sales manager for R. Stock & Co., the manufacturer and seller of the imported drills. On September 15, 1954, Rhauda became associated with the Avildsen Tools & Machines, Inc., the importer of the drills in controversy, and occupies a similar position to that held with Stock & Co. By reason of his experience, he was well informed and highly qualified to testify concerning the nature, quality, and usefulness of the drills in controversy. He was positive in his statement that the imported drills are not such as those sold for home consumption in Germany, since they do not possess the proper qualities to meet the requirements of that market; that, while the two classes of drills may be similar in appearance, those of the better quality find their outlet in the industrial trade, while those of inferior quality go to the hardware trade, small automotive jobbers, and the do-it-yourself people.

Rhauda testified in part as follows:

Q. I am not sure whether I covered this fully. I might be repeating, but, are these drills which you imported suitable and usable by the people who use the type of drill which Stock & Company was making while you were with them so far as quality and other conditions are concerned?—A. Definitely not inasmuch as the sizes are concerned and then they would not be purchased by large industries at all.

Q. Any other reason?—A. They could not be used for good drilling jobs in the large industries.

The testimony of Rhauda is corroborated by an affidavit (exhibit 10) of Robert Haitz, managing director of R. Stock & Co., describing

the differences in construction, quality, composition, and use between the drills sold for home consumption and those for export to the United States, and also by defendant's exhibit B, consisting of a letter and translation thereof, addressed to Avildsen by Stock on July 23, 1956, setting forth in greater detail the differences referred to in exhibit 10. Confirmation of these facts is also found in the report of Treasury Representative William R. Knoke (collective exhibit 11).

It is the contention of plaintiffs that the evidence above referred to warrants the conclusion that the imported drills differ from the drills sold for home consumption in Germany to a degree which establishes in factual and legal contemplation that the imported drills are neither "such" nor "similar" to those sold for home consumption, within the meaning of section 402(c) of the Tariff Act of 1930 (19 U.S.C. § 1402 (c)), as amended by the Customs Administrative Act of 1938. The only evidence to the contrary is an expression of opinion by Milton A. Block, examiner of merchandise in the appraiser's office at the port of New York, who discovered no difference, based upon his examination of the articles.

On the other hand, the Government contends that the merchandise under consideration is similar to that sold for home consumption in Germany. Alternatively, the Government asserts that even if it be assumed arguendo that the merchandise is not similar, there has been complete failure on the part of plaintiffs to establish export value for the subject merchandise.

Many years ago, our appellate court gave us the formula for testing the similarity of merchandise for valuation purposes in the case of *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714. The following is quoted from the opinion of the court in that case:

In view of the common meaning of the word "similar" and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same users, and are so used, ordinarily, they are similar, within the meaning of section 402(b). [Tariff Act of 1922.]

That definition, with slight modification not important here, has been adopted and followed in a great many cases by this court and our appellate court. Flowing through them all has been the element of commercial interchangeability.

The Government cites several decisions which it claims sustain its contention that similarity exists. A careful examination of them satisfies the court that factual differences and circumstances prevail which distinguish them from the case at bar. The weight of competent evidence in the present proceedings shows marked differences in construction, composition, quality, and use, which leave no doubt

in the mind of the court that the subject merchandise is not similar to the twist drills sold for home consumption in Germany. Hence, the court holds that the contention in support of similarity is without merit.

As to the alternative contention of the Government that plaintiffs have not proved export value, within the meaning of section 402(d) of the Tariff Act of 1930 (19 U.S.C. § 1402(d)), an examination of the record satisfies the court that such proof is lacking in certain vital respects.

Statutory export value is defined as follows:

The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The evidence before the court is fatally defective in that it fails to establish the price at which the merchandise in controversy is freely offered for sale to all purchasers in the usual wholesale quantities. Collective exhibits 1 through 9 indicate that the shipments in controversy were all part and parcel of an original order of $33,000 worth of drills, and there is no indication in the testimony of Rhauda, sales manager for the real importer, nor does the affidavit (exhibit 10) of Robert Haitz, managing director of R. Stock & Co. of Berlin, seller, tend to establish a price at which the drills were freely offered for sale to all purchasers for export to the United States. Furthermore, there is utter failure to establish the usual wholesale quantity within the meaning of said section 402(d), *supra*. When the witness Rhauda was asked what was the usual wholesale quantity in which he purchased, he replied:

A. There are not so many as we purchased. I really don't know.

JUDGE LAWRENCE: What is the usual wholesale quantity in which you buy?

THE WITNESS: This would be the usual wholesale quantity.

X Q. You don't know whether that would be the usual wholesale quantity for any other concern?—A. This, I don't know.

The report of Treasury Representative William R. Knoke (collective exhibit 11), under date of October 24, 1955, states that he visited the offices of R. Stock & Co., Berlin, Germany, and interviewed Kurt Lacher, export manager, and R. Haitz, managing director, whose affidavit, exhibit 10, was referred to, *supra*, and, among other things was furnished the following information, which was verified from the cost books of account and other records:

*Usual Wholesale Quantity*: The majority of individual deliveries and bulk of merchandise sold for export to the United States is to Avildsen. A review of orders, and statements made by those interviewed reveals that well in excess of 50% of all merchandise destined for the American market is purchased by Avildsen. However, the question of major portion of sales presents a somewhat different picture. Both Mr. Lacher and Mr. Haitz stated that the purchases by Avildsen represented one sale, and that they had reached an agreement and a price based on a certain quantity to be delivered over a period of months. As stated above the number of individual deliveries to Avildsen also exceeds the total of deliveries to all other purchasers in the United States. In this connection it is noted that each Consular Invoice under "as per order accepted" specified a "letter of (date)". It was explained that such notations represented a delivery order against the original total order. In order to clarify the understanding of whether an individual delivery could be considered a "sale" the matter was reviewed again and both Mr. Lacher and Mr. Haitz stated that it would be their understanding that they made one sale to Avildsen although payment is made only against each individual delivery.

After a careful examination of the record, the court having found that the subject merchandise is not similar to the twist drills sold for home consumption in Germany, which formed the basis of the appraiser's action, it follows that the appraisement was erroneous.

Moreover, plaintiffs herein have failed to produce competent evidence that the merchandise in controversy was freely offered for sale to all purchasers in the usual wholesale quantities for exportation to the United States, which is necessary to support their claim for statutory export value.

In the circumstances, the court is of opinion that the interests of justice would best be served by restoring the case to the calendar in order that both parties may have an opportunity to present evidence upon which a finding of value under one of the statutory bases may be made.

Order will issue accordingly.