(A.R.D. 179)

UNITED STATES *v.* J. J. BOLL ET AL.

Entry No. 982254, etc.

Third Division, Appellate Term

(Decided June 29, 1964)

*John W. Douglas*, Assistant Attorney General (*Daniel I. Auster* and *Charles P. Deem*, trial attorneys), for the appellant.
*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for the appellees.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: These 22 consolidated reappraisement appeals were before the trial judge three times. On each trial, proofs were adduced and an opinion was written.

The merchandise consists of twist drills, high-speed steel composition and carbon steel, which were exported from West Germany in 1955 and 1956 by R. Stock & Co., and consigned by air freight to Avildsen Tools & Machines, Inc., of New York. Appellees here (plaintiffs below) are customs brokers, who acted as such in behalf of Avildsen as to the different entries.

This merchandise was all entered before February 27, 1958, effective date of the Customs Simplification Act of 1956. It is, therefore, old section 402 which is to be construed as to the merchandise of these appraisements.

Appellees had ample opportunity to prove their case. During the course of the three trials, the trial judge found that there was no basis for finding foreign value, which was the basis of appraisement (*J. J. Boll et al.* v. *United States*, 44 Cust. Ct. 737, Reap. Dec. 9717); or export value, the basis which appellees claimed (*Id.* v. *Id.*, 47 Cust.

· 523

Ct. 456, Reap. Dec. 10076) ; or United States value. That left cost of production, on the trial judge's findings, as the basis for valuing these twist steel drills. *J. J. Boll et al.* v. *United States*, 51 Cust. Ct. 396, Reap. Dec. 10590. Without conceding that the facts of record support the findings of the trial judge as to basis, the parties have stipulated what the cost of production is, if that should eventuate as the proper basis of appraisement. Errors before us on review attack several findings of the trial judge as to bases of appraisement, but not his finding that there is no export value. Therefore, that finding is not before us.

The 16 errors alleged by appellant go to several matters of trial procedure; and, on the merits, attack, *inter alia*, the findings that there is neither a foreign value nor United States value for such or similar merchandise.

In addition to the evidence that was admitted to record, errors are alleged as to exclusion of certain proofs offered by appellant (defendant below).

There seems to be little doubt that steel twist drills were freely sold in West Germany during the period of these exportations. Appellant contends that the merchandise of such domestic offerings in West Germany meets the statutory test for similar merchandise. Appellees contend that it is not similar merchandise. While appellant claimed error in the finding of the trial judge that there was no statutory foreign value for *such* merchandise, that claim was not pressed. Nor could it be, inasmuch as the appraiser found value on the basis of the foreign value of *similar* merchandise, a finding which necessarily required his finding that there was no foreign value for *such* merchandise. Inasmuch as plaintiffs do not claim that the appraiser was in error in finding no foreign value for *such* merchandise, the finding of the appraiser is not in controversy. It stands. What appellant argues is that the record shows there was a foreign value for *similar* merchandise.

The presumption of correctness that attaches to the appraiser's finding of value required appellees (plaintiffs below) to overcome the presumption by proofs sufficient to negate the appraised basis.

What does the record show in that respect?

Appellees chiefly rely, as negating the existence of a foreign value for similar merchandise, on the testimony of Mr. Hermann Rhauda and on certain documentary exhibits, as showing that no merchandise was offered or sold in West Germany that was, in fact, *similar* to these drills. Mr. Rhauda has been, since September 15, 1954, export sales manager of Avildsen Tools & Machines, Inc. Before that, from September 1, 1939, to 1954, he was export sales manager with R. N. Stock & Co., manufacturer of perishable metal cutting tools, and the maker and shipper of the very merchandise of these appeals.

The differences between steel twist drills sold domestically in West Germany and those of these appeals, imported into the United States, may be summarized as follows:

The imported drills are sold to the hardware trade, to small automotive jobbers, and to do-it-yourself people. They are never sold to industry. While Avildsen was not, in 1954, making these lower price drills for sale to the hardware trade, it is now manufacturing them.

Industrial uses of drills call for a tough, precision accurate drill. The imported drills could not do that job. There are certain other differences. Sizes in Germany are in meters; for export to the United States, in inches. Size measurements proceed from different points. (R. 42.)

The substantial difference, however, is that the two types of drill are made differently and for different markets and different uses. In our opinion, that difference supports the finding of the trial judge that there is no foreign value for similar merchandise. On the record before us, the weight of evidence is that the two classes of drills are not interchangeable in use or in performance.

The principle, early established, that interchangeability is a standard by which similarity, for tariff purposes, may be tested, has been somewhat strained in application, to be sure. *H. J. Heinz Company* v. *United States*, 43 CCPA 128, C.A.D. 619, is cited by appellant as authority for the proposition that the drills which were sold in Germany and the imported drills are similar marchandise.

The claim of the importer, in the *Heinz* case, was that high-quality tomato pulp, produced in France but sold to England and exported from there to the United States, should be appraised on the basis of the foreign value of tomato pulp, of a lower quality, in England. Our appeals court sustained that claim, on the ground that the test, where foreign value is the issue, is whether the two articles are interchangeable in the foreign market. Finding, on the record before it, that the better quality tomato pulp which was exported from England to Heinz, was of quality acceptable to English manufacturers, the court held that "for all utilitarian purposes, one * * * [was] a substitute for the other * * *." (*Heinz, supra*, p. 134.)

The country of export, here, is West Germany. These drills would not, on the weight of evidence before us, be acceptable, for all utilitarian purposes, as a substitute for the heavier duty drills which appellant contends are similar drills.

See, also, *United States* v. *Thomas & Co.*, 21 CCPA 254, T.D. 46788; *United States* v. *The Heyman Co., Inc.*, 48 CCPA 13, C.A.D. 755.

The two documents which were tendered by defendant, and which the trial judge excluded, would not affect our decision in this respect, even if they were of record. There is no proof that the drills which were sent by the New York appraiser to the Industrial Testing Labo-

ratory at the United States Naval Shipyard in Philadelphia, as discussed in the appraiser's letter, were identical to the drills of these importations and to the drills that were sold in the German home market. Nor is it material to the issue of *foreign* value whether there is, or is not, interchangeability of two articles in the United States market. As to the foreign market, West Germany, the appraiser asked no question as to interchangeability in that market, and it may not be assumed that a laboratory superintendent at Philadelphia is a competent witness as to interchangeability of articles in the West German market. Moreover, the most he was able to say was that accurate evaluation could not be made without "destructive testing to establish the relative quality of each group."

We find no error in the exclusion of these documents.

We find, also, that plaintiffs overcame the presumption that there was a foreign value for these drills.

We express no opinion as to export value, there being no allegation that the trial judge erred in his finding that there is not an export value for such or similar merchandise.

Appellant alleges error in the finding that there is no statutory United States value for such or similar merchandise.

The parties entered into a stipulation as to certain facts, including the following facts that have a bearing on the issue as to United States value:

1. That during the period of exportation of the twist drills the subject of the appeals herein, all sales, in the United States, of the imported twist drills here involved, were made by Avildsen Tools and Machines, Inc., through selling agents appointed by them for designated areas therein; that said selling agents sold the said drills only to hardware jobbers and automotive warehouse distributors and refused to sell them to any other category of purchaser; that during the said period similar imported twist drills were not freely offered for sale or sold to all purchasers in the principal markets of the United States in the usual wholesale quantities and in the ordinary course of trade; and that the Customs Agent's report dated March 30, 1962, (File 3–1009 and AA 332.3 and Exhibits A and B attached thereto) annexed hereto, may be received in evidence and marked Defendant's Collective Exhibit H.

The points which appellant makes, with respect to the alleged error of the trial judge in finding that there is no United States value for the drills, are: First, that the stipulated facts do not support a finding that there was not a free market in the United States for Avildsen drills; and, second, that there is no proof that the drills sold by two other importers in the United States, are not "the same drill as Avildsen" sold.

As to Avildsen's sales, the stipulated facts are not precisely what appellant seems to think. If the drills were sold freely to wholesalers throughout the United States, much could be said for the position that appellant urges. The stipulated facts show that each selling agent

had a designated area, within which he sold to hardware jobbers and automotive warehouse distributors. This fact distinguishes the *Rico* case (*Rico, Inc.* v. *United States*, 48 CCPA 110, C.A.D. 773), which appellant cites, and other cases like *Rico*.

Appellant argues that the sales of Avildsen drills by area jobbers and distributors are the wholesale sales which section 402(e) contemplates. However, the record seems clear that the principal market for these drills, in the United States, and the only countrywide market, was where Avildsen offered the drills for sale. *In that market*, the drills were *not* freely offered "to all purchasers," as the record shows.

As to the drills that were imported and sold by E. Miltenberg, Inc., and W. C. Opperman, the stipulation precludes interpretation that these are *similar* drills. There is testimony that they are not *such* drills.

Defendant's witness, Mr. Milton A. Block, an examiner in the New York appraiser's office, did not satisfactorily identify the Miltenberg and Opperman drills as being *such* drills as the Avildsen drills. Based solely on the excluded naval laboratory report, and not on his own knowledge, he was of opinion that they were. This does not stand up against Mr. Rhauda's more experienced and personal knowledge. He said that the drills were different, and this for reasons and in respects as to which he testified quite fully.

This case lays down no new principle of law. It is *sui generis*, limited to the special facts before us. While it may be true, as appellant asserts, that the trial judge showed zeal in the search for such a record as would permit of findings and judgment, the truth is that the responsibility of the trial judge in appeals to reappraisement is an unusual one. It was delineated in *United States* v. *A. N. Deringer, Inc.*, 42 Cust. Ct. 711, A.R.D. 102, as follows:

> The duty of the court in appeals to reappraisement is not, as in most litigation, judgment as between the parties with respect to controverted issues. However difficult it may be and often is to arrive at such judgment, Congress has laid on the court a different burden in appeals to reappraisement, that of ascertaining and determining what the value of merchandise is for purposes of tariff and related exactions. This may turn out to be the value which the appraiser found, or it may be the value claimed by the importer; but, also, it may be some other value, different from either. What is important is that the court has to find a value and to state the facts on which that finding is made, and for this purpose there must be proofs. [Pp. 711, 712.]

In a matter personal to the conscience of each judge in discharge of his judicial burden, we find nothing here to support appellant's allegations of judicial error.

We affirm the findings of fact and conclusions of law of the trial judge, which we incorporate by reference.

Judgment will be entered accordingly.