(R.D. 11314)

Fashion Ribbon Co., *v.* United States

Entry No. IAD 547234.

(Decided May 24, 1967)

*Barnes, Richardson & Colburn* (*Earl R. Lidstrom* and *James F. Donnelly* of counsel) for the plaintiff.

*Carl Eardley*, Acting Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

FORD, Judge: The merchandise involved in this appeal for reappraisement consists of ribbon novelties or textile trimmings in the shape of bows or other ornamental motifs used principally to decorate women's undergarments. They were imported from Haiti and entered at the port of New York on May 1, 1963. The appeal has been limited to the first three articles on the invoice, the items designated as S/2004, OR/2003, and O/2004/B, and abandoned as to all other articles, without conceding the correctness of the appraised values thereof.

The invoice sets out a labor price for each item, a material price, and a total for the two. It also adds 30 percent on the labor price for profit and overhead. The merchandise was appraised on the basis of constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the unit labor price, plus 30 percent, and the unit material price, plus 20 percent, packed. The basis of appraisement is not disputed, and it is agreed that the merchandise does not appear on the final list published by the Secretary of the Treasury in 93 Treas. Dec. 14, T.D. 54521. Plaintiff claims that the proper constructed value is represented by the cost of materials and fabrication, plus an amount equaling 30 percent of the labor cost (for general expenses and profit), plus the cost of packing.

This case has been submitted upon the affidavit of Georges Sicard, proprietor and sole owner of Aiguilles d'Haiti, the manufacturer of the involved merchandise. Mr. Sicard stated that, since the inception of the company 10 years ago, he has been in charge of all its operations, including production and sales; that he has personal knowledge of the selling policies of the company; that the books of account and records are maintained by him or under his direct supervision; and that he is personally familiar with the cost of producing its products. To the best of his knowledge, there were no other manufacturers of ribbon novelties in Haiti during 1963. Such articles were not sold in Haiti, there being no manufacturers of ladies' undergarments there to consume them. The entire production of his company in 1963 was sold to Fashion Ribbon Co., Inc., of New York.

The affidavit gives the cost of materials and fabrication and other processing employed in producing such products at a time preceding exportation of the involved merchandise which would ordinarily permit the production of that merchandise in the ordinary course of business. It lists such costs and amounts for general expenses and profit and for packing, all per gross, as follows:

| Item No. | Material | Labor | General expenses and profit | Packing |
|---|---|---|---|---|
| S/2004 | $ . 2065 | $ . 28 | $ . 0840 | $ . 0025 |
| OR/2003 | . 1177 | . 32 | . 0960 | . 0025 |
| 0/2004/B | . 0683 | . 28 | . 0840 | . 0025 |

In regard to these items, affiant states: Suitable ribbon is not produced in Haiti. The material used was received from Fashion Ribbon Co., Inc., and the material cost is the actual cost charged to Aiguilles d'Haiti by Fashion Ribbon Co., Inc., including transportation. Ribbon could be obtained from other sources at approximately the same price. Labor employed was compensated on a piecework basis, and the cost per unit remained constant over a number of years. General expenses and profit are determined by taking 30 percent of the known labor cost for each item. This factor does not vary and has been affiant's markup to cover general expenses and profit since 1955. Neither the cost of production, nor the markup for general expenses and profit, nor the selling price varies with the quantity sold or purchased. It is further stated:

Ribbon novelties manufactured in Haiti have been produced and sold in the manner described above for the past ten years that I know of. A markup to cover general expenses and profit based upon a percentage of labor is normal in the production of ribbon novelties in Haiti because of the known cost of labor, which is always performed on a piecework basis. Compensating workers on a piecework basis is considered a proper method of paying for labor in Haiti.

The affiant stated he had no interest in Fashion Ribbon Co., Inc., and that the importer had no interest in his company.

The pertinent provisions of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, provide: ·

SEC. 402. VALUE.

\*          \*          \*          \*          \*          \*          \*

(d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are

made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

Plaintiff claims that it has sufficiently established the three elements of constructed value required by this section—the cost of materials and fabrication, an amount for general expenses and profit, and the cost of all containers, coverings, and packing, and that the formula used to determine general expenses and profit, 30 percent of the labor cost, was the factor actually used and was a reasonable and proper method of determining this amount. Defendant contends that general expenses and profit are two separate and distinct elements; that, in order to satisfy the statutory requirements, they must be separately established; and that computing these elements by taking 30 percent of the labor costs is not in conformity with the requirements of the statute.

It is to be noted that the appraiser, in determining value, followed the manufacturer's formula by adding 30 percent to the labor cost, and then added 20 percent, apparently to the cost of materials. Defendant does not now contend that the cost of material is incorrect and that 20 percent should be added to it, but claims that plaintiff has not properly proven the amount added for general expenses and profit.

While it is presumed that the appraiser's finding of value is correct, the presumption is not evidence and may not be weighed against evidence produced at the trial. *Luria Steel & Trading Corp. et al.* v. *United States*, 42 Cust. Ct. 480, Reap. Dec. 9311. The presumption stands only so long as there is no competent evidence introduced to refute or overcome it. *United States* v. *Joseph Tanous*, 53 CCPA 129, C.A.D. 889. Here the cost of materials and labor has been given in the affidavit of Georges Sicard from the knowledge he derived as owner and operator of the manufacturer and as one who personally maintained or supervised the keeping of the books of account and records of the company. Similar affidavits by persons having knowledge of facts personally and from the books and records of the manufacturer have been held competent to establish a *prima facie* case. *United States* v. *North American Asbestos Corp.*, 48 CCPA 153, C.A.D. 783; *Montgomery Ward & Company* v. *United States*, 51 Cust. Ct. 431, Reap. Dec. 10612; *Chicago Bird & Cage Co.* v. *United States*, 51 Cust. Ct. 456, Reap. Dec. 10625.

I find, therefore, that plaintiff has established *prima facie* the first element of constructed value, cost of materials and fabrication. There appears to be no dispute as to the third element, cost of containers, coverings, and packing.

The issue relates solely to the second element of constructed value, general expenses and profit.

It is to be noted at the outset that the amount for general expenses and profit is to be "that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation." However, in the instant case the uncontradicted affidavit of Mr. Sicard indicates that there were no other producers of ribbon novelties in Haiti during 1963. In similar circumstances under predecessor statutes, it has been held that the general expenses and profit actually added by the manufacturer control. *United States* v. *Henry Maier*, 21 CCPA 41, T.D. 46378; *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407; *English Electric Export & Trading Co., Inc., et al. v. United States*, 53 CCPA 84, C.A.D. 881; *United States* v. *Draeger Shipping Co., Inc.*, 6 Cust. Ct. 783, Reap. Dec. 5118, affirmed 29 CCPA 258, C.A.D. 199.

The first question to be determined is whether subdivision (2) of section 402(d), *supra*, calls for one item or two. The language used is singular—"an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind." Although there is a general rule that the singular may be read as including the plural and the plural as though written in the singular (*United States* v. *McCoy*, 5 Ct. Cust. Appls. 264, 269, T.D. 34445; *Domestic Fuel Corp.* v. *United States*, 22 CCPA 509, 515, T.D. 47496), it is also a rule that the intent of Congress is to be ascertained primarily from the language used in the statute (*United States* v. *British Cars & Parts, Inc., Robert E. Landweer*, 47 CCPA 114, 117, C.A.D. 741; *John S. James a/c The Consolidated Packaging Corp.* v. *United States*, 48 CCPA 75, 77, C.A.D. 768). The master rule, of course, is to ascertain the legislative intent. *United States* v. *Clay Adams Co., Inc.*, 20 CCPA 285, 288, T.D. 46078; *Sandoz Chemical Works, Inc.* v. *United States*, 43 CCPA 152, 156, C.A.D. 623. Resort may be had to legislative history where a statute is found to be ambiguous and a court may refer to it in order to verify its position. *United States* v. *Durst Mfg. Co., Inc.*, 46 CCPA 74, 76, C.A.D. 700; *United States* v. *Jos. Riedel Glass Works, Inc.*, 32 CCPA 201, 203, C.A.D. 307; *United States* v. *J. E. Bernard & Co., Inc.*, 42 CCPA 69, 73, C.A.D. 573.

In the instant case, the legislative history is significant since the Customs Simplification Act of 1956 materially changed the provisions of paragraph 402 of the Tariff Act of 1930 as originally enacted (hereinafter referred to as the old law). A change in language ordinarily imports a change in intent. *Fynaut & Popek* v. *United States*, 23 CCPA 265, 269, T.D. 48112; *K. Togasaki & Co.* v. *United States*,

23 CCPA 342, 348, T.D. 48197. Here, Senate Report No. 2560, prepared when the Customs Simplification Act of 1956 was under consideration, states that one of the purposes of the bill was to *revise* methods of valuing merchandise. (1956 U. S. Code Cong. & Admin. News 4179, 4180.)

Section 402 of the old law, so far as here pertinent, provided:

(f) Cost or Production. For the purpose of this title, the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expense (not less than 10 per centum of such cost) in the case of such or similar merchandise;

\*     \*     \*     \*     \*     \*     \*

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Under those provisions, it was held that plaintiff was required to establish separate amounts for each of the four elements enumerated. *Mrs. G. P. Snow* v. *United States,* 24 CCPA 319, T.D. 48767; *United States* v. *Malhame & Co.,* 24 CCPA 448, 454, T.D. 48911. Conversely, under the same provisions in the Tariff Act of 1922, it was held that plaintiff was not required to itemize separately the cost of materials and of fabrication required by subdivision (1), *supra. Philipp Wirth et al.* v. *United States,* 23 CCPA 283, T.D. 48144. In that case, the court said (pp. 286–287):

It will be observed that this section requires, in order to establish cost of production, the proof of four principal items which are numbered (1) to (4), inclusive. The appellate division was of opinion, and so held, that in order to establish the elements of cost of production found in said subsection (1), the cost of materials, fabrication, and manipulation must be broken down and itemized so that it might be ascertained, separately, how much the materials cost, how much was expended for labor, and any other items which might enter into the production costs mentioned in said subsection (1).

\*     \*     \*     \*     \*     \*     \*

As a matter of fact, it seems to us to be plainly indicated by the said section and its arrangement, that the Congress intended the cost of

production to be shown and to be itemized, the items to consist of the four elements which are separately enumerated in said section 402(e). If further itemization had been required, we have no doubt the Congress in drafting the act, would have so provided. The fact that the Congress did not do so plainly evinces that no further itemization was required.

This case was followed in *United States* v. *A. N. Deringer, Inc.*, 42 Cust. Ct. 711, A.R.D. 102, appeal dismissed 46 CCPA 151, where it was held that the general expense component need not be itemized.

Under the old law, general expenses and profit were provided for separately in different subdivisions. The Customs Simplification Act of 1956 brought the two components together in a single subdivision. In view of this action and the interpretation given to the old law, it is evident that Congress did not intend a separate itemization for general expenses and for profit.

The next question is whether the evidence presented by plaintiff as to the amount added in this case is sufficient to satisfy the statutory requirements. While there are many cases where various items making up general expenses or profit have been in dispute, there are also cases where statements and schedules giving gross amounts for each of the statutory components have been held sufficient. *United States* v. *T. E. Ash (American Askania Corp.), Freedman & Slater*, 23 CCPA 360, T.D. 48211; *United States* v. *F. B. Vandegrift & Co. et al.*, 26 CCPA 360, C.A.D. 42; *United States* v. *Malhame & Co. et al.*, 39 CCPA 108, C.A.D. 472; *United States* v. *A. N. Deringer, Inc., supra.* In some of these cases the amounts were expressed in percentages.

Defendant claims that the procedure of the manufacturer here in calculating the amount for general expenses and profit by taking 30 percent of the labor cost is not in accordance with the statute. The statute does not state the manner in which general expenses and profit are to be computed except that they are to be equal to that usually reflected in sales of merchandise of the same general class in the ordinary course of trade and in the usual wholesale quantities. Mr. Sicard stated that 30 percent of the labor cost was the factor actually used and that a markup based on a percentage of labor cost is normal in the production of ribbon novelties in Haiti. No evidence to the contrary has been presented. Profit is often expressed in percentages and in *Empire Distributors, Successor to Empire Wholesalers* v. *United States*, 30 Cust. Ct. 487, Reap. Dec. 8194, affirmed *sub nom. United States* v. *Empire Distributors, Successor to Empire Wholesalers*, 33 Cust. Ct. 568, A.R.D. 47, there was an accounting practice of expressing general expenses as a percentage of direct labor cost. The old law provided for minimum percentages for general expenses

and for profit. The new law eliminates these percentages, but in bringing together the two elements, there is no logical reason and no statutory provision against expressing the single amount in a percentage, if that is what was actually and usually done.

I conclude that the record presented is sufficient to establish *prima facie* that the values claimed by the plaintiff properly represented constructed value.

I find as facts:

1. The merchandise involved herein consists of ribbon novelties or textile trimmings in the shape of bows or other ornamental motifs used principally to decorate women's undergarments. They were imported from Haiti and entered at the port of New York on May 1, 1963. The appeal is limited to the items designated on the invoice as S/2004, OR/2003, and O/2004/B.

2. The merchandise was appraised on the basis of constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the unit labor price, plus 30 percent, and the unit material price, plus 20 percent, packed.

3. The basis of appraisement is not in dispute. The merchandise does not appear on the final list published by the Secretary of the Treasury in 93 Treas. Dec. 14, T.D. 54521.

4. Said merchandise was produced in Haiti and exported therefrom by Aiguilles d'Haiti, which, during 1963, was the only producer of ribbon novelties in Haiti.

5. The manufacturer and importer are not related parties.

6. The cost of materials and of fabrication or other processing of any kind employed in producing such or similar merchandise at a time preceding the date of exportation of the instant merchandise which would ordinarily permit its production in the ordinary course of business was as follows:

| Item No. | Material | Labor | Total (per gross) |
|---|---|---|---|
| S/2004 | $ .2065 | $ .28 | $ .4865 |
| OR/2003 | .1177 | .32 | .4377 |
| O/2004/B | .0683 | .28 | .3483 |

7. The amount for general expenses and profit actually added by Aiguilles d'Haiti during the period in question was determined by taking 30 percent of the labor cost of each item, as follows:

| Item No. | General expenses and profit (per gross) |
|---|---|
| S/2004 | $ .0840 |
| OR/2003 | .0960 |
| O/2004/B | .0840 |

8. The cost of all containers and coverings of whatever nature and all other expenses incidental to placing the instant merchandise in condition, packed ready for shipment to the United States, were as follows:

| Item No. | Packing (per gross) |
|---|---|
| S/2004 | $ .0025 |
| OR/2003 | .0025 |
| O/2004/B | .0025 |

I conclude as matters of law:

1. Constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise involved herein.

2. Such value is as follows:

| Item No. | Constructed value (per gross) |
|---|---|
| S/2004 | $ .5730 |
| OR/2003 | .5362 |
| O/2004/B | .4348 |

3. As to all other merchandise, the appeal, having been abandoned, is dismissed.

Judgment will be entered accordingly.